<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CEDRIC PAIGE,<br><br>            Plaintiff,<br><br>    v.<br><br>THE CITY OF NEW BRUNSWICK, et al.,<br><br>            Defendants. | Civil Action No. 13-2298 (MAS) (LHG)<br><br>**OPINION** |

<u>**SHIPP, District Judge**</u>

This matter comes before the Court on two motions for summary judgment—one brought by Defendants Officer Dean Dakin, Officer Patrick M. Evans, Officer Ronaldo Rodriguez, Officer Daniel Williams, Officer David Bosco, Officer Michael Phommathep (collectively, "Officer Defendants"), and Peter Mangarella (collectively with Officer Defendants, "Individual Defendants"); and another brought by Defendants the City of New Brunswick and the New Brunswick Police Department (collectively, "New Brunswick Defendants"). (ECF Nos. 26, 27.) The Court has carefully considered the parties' submissions and decided the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, New Brunswick Defendants' motion for summary judgment is granted and Individual Defendants' motion for summary judgment is granted in part and denied in part.

**I.**     <u>**Background**</u>

This is an excessive force case brought by Plaintiff Cedric Paige ("Paige" or "Plaintiff") claiming personal injuries as a result of alleged police misconduct. (*See generally* Compl., ECF No. 1.) On April 14, 2011, at approximately 7:49 p.m., Officers Dakin and Evans were patrolling

the area of Feaster Park in New Brunswick, New Jersey (the "Park"). (Individual Defs.' Statement of Material Facts ("SOMF") ¶¶ 1, 3, ECF No. 37-1; Pl.'s Responses to SOMF ("RSOMF") ¶¶ 1, 3, ECF No. 31-1.) During their patrol of the Park, Officers Dakin and Evans recognized Paige and also detected the odor of "burnt marijuana" coming from his location. (SOMF ¶¶ 4, 6; RSOMF ¶¶ 4, 6.) Officers Dakin and Evans were aware of a Middlesex County Prosecutor's Office alert that advised that Paige may be in the possession of a machine pistol (the "Alert"). (SOMF ¶ 6; RSOMF ¶ 6.) The Alert, issued on March 22, 2011, included a picture and description of Paige and stated that "[c]redible information has been received that [Paige] is currently in possession of a machine pistol (Tec-9 or similar type weapon). [Paige] frequents Throop Avenue in New Brunswick. . . . [Paige] is a confirmed Sex Money Murder Blood member with a violent criminal history."[1] (Cert. of Keith M. Platt ("Platt Cert."), Ex. 5, ECF No. 26-2; SOMF ¶¶ 7, 8; RSOMF ¶¶ 7, 8.)

Based on the Alert and the smell of marijuana, Officers Dakin and Evans began to approach Paige to investigate whether he possessed marijuana or a machine pistol. (SOMF ¶ 11; RSOMF ¶ 11.) When he saw Officers Dakin and Evans, Paige fled the Park on a friend's bicycle to avoid interaction and possible arrest. (SOMF ¶¶ 12, 13; RSOMF ¶¶ 12, 13.) Officer Dakin radioed dispatch and pursued Paige by foot while Officer Evans pursued Paige by car. (SOMF ¶¶ 14, 15; RSOMF ¶¶ 14, 15.) Officer Evans drove his patrol unit parallel to Paige who was riding the bicycle on the sidewalk. (SOMF ¶ 16; RSOMF ¶ 16.)

The parties disagree as to the events that occurred next. Individual Defendants assert that Officer Evans ordered Paige to stop as he was driving parallel to him and that Paige refused to do

---

[1] Paige admits he is a "5-star" member of the Sex, Money, Murder set of the Bloods Street Gang. (Platt Cert., Ex. 4 ("Paige Tr.") 65:6-66:6, ECF No. 26-2; SOMF ¶ 9; RSOMF ¶ 9.)

so. (SOMF ¶ 16.) Paige, however, asserts that the officers never told him to stop and that the police officer who was driving alongside him said "we're going to catch you with a gun" and "we're going to get you." (RSOMF ¶ 16; Paige Tr. 20:24-21:6, 22:9-13.)

Dispatch requested that Officers Williams and Rodriguez assist Officers Dakin and Evans in their pursuit of Paige. (SOMF ¶ 17; RSOMF ¶ 17.) Officers Williams and Rodriguez responded to the Park area and, shortly after arriving, observed Paige operating the bicycle at a high rate of speed on the sidewalk of Baldwin Street. (SOMF ¶¶ 18, 19; RSOMF ¶¶ 18, 19.) Here, the parties again disagree as to the facts that occurred next; however, a video of the interaction was captured on the recording from Officers Williams and Rodriguez's patrol unit. (Platt Cert., Ex. 8, ECF No. 26-3.) Individual Defendants argue that Officers Williams and Rodriguez parked their patrol unit at the entrance to a residential parking lot adjacent to Baldwin Street, ahead of Paige, in order to apprehend him on foot. (SOMF ¶¶ 20, 22.) They assert that Paige then rode his bicycle into the front push bars of Officers Williams and Rodriguez's patrol unit as shown in the video recording. (*Id.*)

Conversely, Paige asserts that he was riding the bicycle down Baldwin Avenue when a patrol unit struck his back wheel, which caused him to maneuver onto the sidewalk. (Pl.'s Statement of Additional Material Facts ("SOAMF")[2] ¶ 39, ECF No. 31-1; Paige Tr. 24:1-17.) Paige states that, after the patrol unit turned onto Baldwin Avenue, Officer Rodriguez visually identified Paige riding the bike on the sidewalk. (SOAMF ¶ 40.) Paige asserts that Officers

---

[2] In support of their reply, Individual Defendants submitted a "Supplemental Statement of Facts in Response to Plaintiff's Opposition" (the "Supplemental Statement"). (ECF No. 34-1.) In this Supplemental Statement, Defendants not only respond to Plaintiff's supplemental statement of material facts, but also submit replies to some of Plaintiff's responses to Defendants' own material facts. Replies to an opponent's response to a movant's statement of undisputed material facts are not permitted by Local Rule 56.1. Accordingly, that part of Individual Defendants' supplemental statement will be disregarded by this Court.

Williams and Rodriguez did not park their patrol unit, but drove their patrol unit into the driveway entrance of the parking lot at the same time Paige bicycled across the sidewalk of the entrance, causing Paige to be ejected from his bicycle. (RSOMF ¶ 20.) Paige also argues that the video recording supports his statement of the facts.

Individual Defendants state that Officers Williams and Rodriguez immediately rushed to Paige and, after observing Paige was injured, requested Emergency Medical Services ("EMS") to respond to the scene. (SOMF ¶¶ 25, 26; RSOMF ¶¶ 25, 26.) Shortly thereafter, Officers Dakin and Evans arrived at the scene, and approximately six minutes after the collision, EMS arrived. (SOMF ¶¶ 27, 30; RSOMF ¶¶ 27, 30.) Officer Dakin searched Paige for contraband and weapons and found a bag of marijuana. (SOMF ¶¶ 28, 29; RSOMF ¶¶ 28, 29.) Officers Bosco and Phommathep arrived on scene at the conclusion of the incident. (SOMF ¶ 36; RSOMF ¶ 36.) Paige was treated at Robert Wood Johnson University Hospital and while there was charged with five offenses. (SOMF ¶¶ 31, 32; RSOMF ¶¶ 31, 32; Platt Cert., Ex. 2, ECF No. 26-2.) Paige ultimately pled guilty to possession of a controlled dangerous substance pursuant to a plea agreement. (SOMF ¶ 33; RSOMF ¶ 33.)

On April 11, 2013, Paige filed a complaint against Officer Defendants, Chief of Police Mangarella, and New Brunswick Defendants pursuant to 42 U.S.C. § 1983 claiming violation of the Fourth and Fourteenth Amendments (the "Complaint"). (ECF No. 1.) As against Officer Defendants, Paige asserts causes of action for: (1) excessive force; (2) false arrest/ imprisonment; (3) malicious abuse of process; (4) malicious prosecution; (5) assault and battery; and (6) violation of the New Jersey Civil Rights Act, N.J.S.A. 10:6-1-2. Additionally, Paige asserts claims for supervisor liability and unlawful custom, practice, policy, or inadequate training against

Mangarella and New Brunswick Defendants. Paige seeks compensatory and punitive damages, as well as attorney's fees, interest, and costs.

## II. Legal Standard

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* An issue is genuine if there is sufficient evidentiary support such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson*, 477 U.S. at 248). The party moving for summary judgment has the initial burden of proving an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the non-moving party bears the burden of proof at trial, the movant may discharge its burden by pointing to an absence of evidence necessary to support the non-movant's claim. *Id.* at 325. Alternatively, a moving party may submit affirmative evidence that negates a material element of the non-moving party's claim. *Id.* If the movant brings affirmative evidence or makes a showing that the non-movant lacks evidence essential to its claim, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. The burden of persuasion, however, rests on the non-moving party to establish each element necessary to succeed on the claims on which it bears the burden of proof at trial. *Id.* at 322.

To decide whether a genuine dispute of material fact exists, the Court must consider all facts, drawing all reasonable inferences in a light most favorable to the non-moving party. *Kaucher*, 455 F.3d at 423. On a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Where, however, "critical events at issue have been captured on videotape, the Court is obliged to consider that videotaped evidence in determining whether there is any genuine dispute as to material facts." *Breeland v. Cook*, No. 12-2511, 2014 WL 820167, at *4 (M.D. Pa. Mar. 3, 2014) (citing *Scott v. Harris*, 550 U.S. 372, 380-81 (2007) (reversing court of appeals ruling with respect to application of qualified immunity in an excessive force case, noting that the court of appeals erred by accepting a version of facts that was shown to be a "visible fiction" and admonishing that the lower court "should have viewed the facts in the light depicted by the videotape.")). Absent a genuine dispute for trial, summary judgment as a matter of law is proper.

### III. <u>Analysis</u>

#### A. **Excessive Force Claim**

In Count One of his Complaint, Plaintiff accuses Officers Williams and Rodriguez of using excessive force in conducting the investigatory stop at issue and "slamm[ing] their patrol car into Plaintiff's bicycle causing plaintiff to fly off his bicycle and strike the ground." (Compl. ¶¶ 15-16, 21-24.) Plaintiff also accuses Officer Defendants of using excessive force when they assaulted him after he was already on the ground with severe injuries. (*Id.*) Officer Defendants argue that Paige does not qualify for protection under the Fourth Amendment because there was no seizure, as the collision was accidental and Paige's fault. (Individual Defs.' Br. 4-5, ECF No. 26-4.) In the alternative, Officer Defendants argue that, if there was a seizure, they are immune because

Paige's Fourth Amendment rights were not violated and a reasonable officer would not have known the conduct at issue was unlawful.[3]

Excessive force claims arising out of an investigatory stop or arrest are governed by the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989). The Fourth Amendment provides that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999) (citing *Brower v. Cnty. of Inyo*, 489 U.S. 593, 599 (1989)). A seizure occurs when a person is "stopped by the very instrumentality set in motion or put in place in order to achieve that result." *Brower*, 489 U.S. at 599 (holding that a seizure occurred where police officers placed a tractor-trailer across a highway to stop a fleeing suspect and caused him to crash into it). A seizure, however, does not occur where a person is stopped by an accidental collision. *See United States v. Sinkler*, 91 F. App'x 226, 231 (3d Cir. 2004).

Police officers enjoy some protection under qualified immunity in their performance of discretionary functions. Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional

---

[3] For the first time, in their reply, Individual Defendants argue that Paige's claim that he was assaulted by the officers after he was already on the ground and injured from the collision is "unsubstantiated" and "completely inconsistent with the objective video and medical evidence in this matter." (Individual Defs.' Reply Br. 5, ECF No. 34.) Additionally, Individual Defendants submit medical records to the Court for the first time with their reply brief. (ECF No. 34-2.) As this argument was raised for the first time on reply, the Court will decline to consider it. *See Tigert v. Ranbaxy Pharm., Inc.*, No. 12-154, 2012 WL 6595806, at *5 (D.N.J. Dec. 18, 2012) (citing *United States v. Boggi*, 74 F.3d 470, 478 (3d Cir. 1996) (declining to consider arguments raised in a reply brief); *Stern v. Halligan*, 158 F.3d 729, 731 n.3 (3d Cir. 1998) ("A party cannot raise issues for the first time in a reply brief."); *D'Alessandro v. Bugler Tobacco Co.*, No. 05-5051, 2007 WL 130798, at *2 (D.N.J. Jan. 12, 2007)).

rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The rule balances two interests: (1) "the need to hold public officials accountable when they exercise power irresponsibly" and (2) "the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* A qualified immunity analysis requires consideration of two concepts. "First, a court must decide whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right." *Id.* "Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* The second prong is only met when it would be "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). Although the inquiry is normally considered in that order, it need not be. *Pearson*, 555 U.S. at 236.

Officer Defendants' arguments in support of summary judgment on the excessive force claim rely on their description of the events: (1) Officers Williams and Rodriguez's patrol unit "came to a complete stop in the driveway entrance"; (2) Paige was operating the bicycle at "a high rate of speed"; (3) Paige was engaged in "distracted bicycling"; and (4) Paige rode his bicycle into the front bumper area of the patrol unit. (Individual Defs.' Br. 5-7.) Officer Defendants argue that the recording of the incident clearly establishes that Paige's own negligence caused the collision, and accordingly, there is no genuine dispute of material fact from which a reasonable factfinder could find that there was a "seizure" under the Fourth Amendment or that Officers Williams and Rodriguez used excessive force to stop Paige's flight. (Individual Defs.' Reply Br. 4.) Paige argues there was a seizure and excessive force because Officers Williams and Rodriguez

"deliberately" drove their patrol unit into Paige and Officer Defendants physically assaulted him after he was ejected from the bicycle. (Pl.'s Opp'n Br. 10-11, ECF No. 31.)

The facts reflect significant disagreement among the parties regarding what actually caused the collision of the patrol unit and bicycle. Even though the recording captured the collision, a reasonable jury could find that the video recording of the incident supports either story: an intentional and deliberate strike or an accidental crash. Viewing the facts in the light most favorable to Plaintiff, a reasonable jury could conclude that the collision was not accidental and that Officers Williams and Rodriguez intentionally struck Paige with the patrol unit. If Paige succeeds in demonstrating the collision was deliberate, qualified immunity would not shield the officers from liability. Triable issues of material fact therefore exist as to Paige's excessive force claim, and summary judgment is not appropriate.

### B. Assault and Battery Claim

In Count Seven of his Complaint, Paige alleges that Officer Defendants committed an assault and battery when Officers Williams and Rodriguez deliberately struck him with their patrol unit and when Officer Defendants physically assaulted him after he was ejected from the bicycle. (Compl. ¶¶ 15-16, 58-62.) Officer Defendants move for summary judgment on the basis that the contact between Paige and the patrol unit was not an assault or battery. (Individual Defs.' Br. 26-27.) Additionally, Officer Defendants argue that even if there was an assault or battery, they are immune under N.J.S.A. 59:5-2 or N.J.S.A. 59:3-3. (*Id.* at 22-26.)

Under New Jersey law, "[a] person is subject to liability for the common law tort of assault if: '(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension.'" *Leang v. Jersey City Bd. of Educ.*, 198 N.J. 557, 591 (2009)

(quoting *Wigginton v. Servidio*, 324 N.J. Super. 114, 129 (App. Div. 1999)). "The tort of battery rests upon a nonconsensual touching." *Id.* (citing *Perna v. Pirozzi*, 92 N.J. 446, 461 (1983)). When effecting an arrest, however, a police officer may use such force as is reasonably necessary under the circumstances. *See Hanson v. United States*, 712 F. Supp. 2d 321, 329-30 (D.N.J. 2010); *Mantz v. Chain*, 239 F. Supp. 2d 486, 507 (D.N.J. 2002). "Where a police officer uses excessive force in effectuating an arrest, that officer may be liable for assault and battery." *Hill v. Algor*, 85 F. Supp. 2d 391, 411 (D.N.J. 2000).

Both parties' arguments regarding the assault and battery claim are premised on the excessive force claim. Officer Defendants argue that because their actions do not constitute excessive force and Paige's injuries were not the result of any deliberate action, there is no factual basis for a trier of fact to find an assault or battery. In contrast, Paige argues Officer Defendants intended to cause harm, put him in apprehension of harm, and caused him harm. For the same reasons stated above in regard to the excessive force claim, viewing the facts in the light more favorable to Paige, there is a genuine dispute of material fact as to whether the collision was intentional or accidental, and therefore summary judgment cannot be granted.

Additionally, Officer Defendants are not entitled to immunity under the New Jersey Tort Claims Act if they engaged in "willful misconduct" when they allegedly used excessive force on Paige. Pursuant to N.J.S.A. 59:5-2, a public employee is not liable for "any injury resulting from or caused by a law enforcement officer's pursuit of a person." A public employee, however, is not protected against willful misconduct. "Willful misconduct is 'the commission of a forbidden act with actual (not imputed) knowledge that the act is forbidden . . . . [I]t requires much more than an absence of good faith and much more than negligence.'" *Hill*, 85 F. Supp. 2d at 411-12 (quoting *PBA Local No. 38 v. Woodbridge Police Dep't*, 832 F. Supp. 808, 830 (D.N.J. 1993)). Pursuant

to N.J.S.A. 59:3-3, "[a] public employee is not liable if he acts in good faith in the execution or enforcement of any law." To demonstrate good faith, the employee must demonstrate objective reasonableness. *Hill*, 85 F. Supp. 2d at 411. This objective reasonableness standard is the same standard that applies to whether Officer Defendants enjoy qualified immunity from excessive force actions. *See id.* (citing *Lear v. Twp. of Piscataway*, 236 N.J. Super. 550, 566 (1989)).

Here, the same uncertainties that prevent the Court from granting summary judgment on the excessive force claim also prevent the Court from granting summary judgment on the assault and battery claim. There is a genuine dispute of material fact regarding whether the actions of Officer Defendants were intentional or accidental. Therefore, the Court will deny summary judgment on Count Seven of Plaintiff's Complaint.

### C. New Jersey Civil Rights Act Claim

In Count Eight of his Complaint, Plaintiff alleges that the excessive force used by Officer Defendants deprived him of his constitutional rights and violated the New Jersey Civil Rights Acts. Officer Defendants argue that Paige cannot maintain a cause of action under the New Jersey Civil Rights Act because Officer Defendants enjoy qualified immunity. (Individual Defs.' Br. 28-30.) Officer Defendants' argument is based solely on the assumption that the collision was "clearly accidental and the fault of Plaintiff" and Officer Defendants ordered Paige to stop. For the same reasons stated above, these facts are disputed, and summary judgment is not appropriate on this claim.

### D. Punitive Damages

Officer Defendants also move for summary judgment on Paige's request for punitive damages. Officer Defendants' arguments against punitive damages mimic their arguments related to the excessive force, assault and battery, and New Jersey Civil Rights Act claims. "[A] jury may

be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Additionally, under the state law claims, a plaintiff may recover punitive damages against public employees if the employee engaged in "willful misconduct." *Toto v. Ensuar*, 196 N.J. 134, 148 (2008). Here, there is a genuine dispute of material fact as to whether the collision between Officers Williams and Rodriguez's patrol unit and Paige was accidental and what acts transpired thereafter. Although there is a video recording of the incident, a reasonable jury may come to the conclusion that the recording supports Paige's factual recitation. Accordingly, summary judgment is not appropriate on punitive damages.

### E.  Officers Bosco and Phommathep

Officer Defendants also argue, with regard to Plaintiff's claims for excessive force, assault and battery, and violation of the New Jersey Civil Rights Act, that Officers Bosco and Phommathep had no role in the investigation, pursuit, or search of Paige, and therefore summary judgment should be granted in their favor on all claims. The Court agrees.

In his Complaint, Paige alleges that Officer Defendants, including Officers Bosco and Phommathep, assaulted him while he was on the ground after he fell off his bike and that he then lost consciousness. (Compl. ¶ 16.) Paige makes no other allegations regarding Officers Bosco and Phommathep's actions. At his deposition, Paige testified that right after the collision he tried to get up but police officers "were swinging at [him]." (Paige Tr. 28:2-25.) Additionally, Paige testified that there were approximately three or four police officers at the scene at that time. (*Id.*) In conjunction with this motion, Paige admitted that Officers Bosco and Phommathep arrived on scene at the conclusion of the incident, after Officers Dakin, Evans, Rodriguez, and Williams were

already there. (SOMF ¶¶ 25, 27, 36; RSOMF ¶¶ 25, 27, 36.) No other facts have been asserted as to Officers Bosco and Phommathep's involvement with the excessive force alleged by Paige.

Here, no reasonable fact finder could conclude that Officers Bosco and Phommathep's conduct violated the standards set forth above for excessive force, assault and battery, or violation of the New Jersey Civil Rights Act because they were not present at the scene when the alleged violence underlying Paige's claims took place. *See Malignaggi v. Cnty. of Gloucester*, 855 F. Supp. 74, 81 (D.N.J. 1994) (citing *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986)). There is no genuine dispute of material fact that any violence that did occur happened before Officers Bosco and Phommathep arrived on scene. Based on the foregoing, summary judgment as to Officers Bosco and Phommathep must be granted.

### F.     Uncontested Claims

In response to Defendants' motions for summary judgment, Paige concedes he cannot maintain a cause of action for false arrest/imprisonment (Count Two), malicious abuse of process (Count Three), or malicious prosecution (Count Four) against Officer Defendants. Additionally, Paige concedes that his claims against Mangarella and New Brunswick Defendants for supervisor liability (Count Five) and unlawful custom, practice, policy, or inadequate training (Count Six) fail. Accordingly, Defendants' motions for summary judgment are granted on these counts.

## IV. Conclusion

For the reasons set forth above, New Brunswick Defendants' motion for summary judgment is granted and Individual Defendants' motion for summary judgment is granted in part and denied in part. An order consistent with this Opinion will be entered.

                                                   /s/ Michael A. Shipp
                                                 **MICHAEL A. SHIPP**
                                                 **UNITED STATES DISTRICT JUDGE**

**Dated:** May 29th, 2015